JAMES N. PURSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54124. Promulgated February 11, 1933.

*Wm. P. Smith, Esq.,* for the petitioner.
*Nathan Gammon, Esq.,* for the respondent.

**OPINION.**

MATTHEWS: It is the petitioner's contention that the respondent erred in refusing to allow the profits of the Detroit branch of Purse Brothers, a partnership, to be divided equally between the petitioner and his son, G. Roe Purse. Petitioner claims in the alternative that, if it be determined that petitioner's son was not a member of the partnership in 1928 and therefore was not entitled to share in the profits of the business, the amount of $7,580.11 paid over to the son for the fiscal year ended September 30, 1928, represented compensation for services actually rendered by the son and such amount should be treated as an ordinary and necessary expense of the business instead of being added to the one-half of the partnership profits of Purse Brothers which was reported by the petitioner.

We have found that in his individual income tax return for 1928 G. Roe Purse reported salary from Purse Brothers in the sum of $3,020 and further reported under the heading of "Income from Partnerships" the sum of $7,580.11 "for services rendered Purse Brothers." This amount of $7,580.11 was not set up on the books of the partnership as an expense item, which would be the usual procedure if it represented compensation for services. A credit balance of $15,160.22 was transferred on October 1, 1928, to a new account entitled "Surplus or Uncredited Profit" and entries subsequently made indicate that one-half of this amount, or $7,580.11, was ultimately credited to G. Roe Purse. If it be determined that G. Roe Purse was entitled to receive this amount as a member of the partnership, it will be unnecessary to consider the petitioner's alternative claim.

Petitioner's son began working for his father when he was a boy attending school and was "brought up in the business." He had been devoting his entire time and energies to the business for six or seven years prior to the taxable period involved herein and had rendered valuable services to the partnership. He went on buying trips and handled about one-half of the purchases of vegetables. He looked after the shipping end of the business, the operations of the trucks and the sales and deliveries from cars on the track. Petitioner's son had drawn $40 a week from the partnership in 1924 and his salary had been increased several times until by 1927 he was receiving $60 a week. In order to keep his son interested in the business petitioner promised to make him a partner. Accordingly, when it was decided that Artie Purse should go to Toledo to manage the Toledo branch of the business, petitioner's son was taken into the partnership and thereafter received one-half of the profits of the Detroit branch.

An examination of the record discloses that, after Artie Purse gave up his interest in the Detroit business and took over the Toledo branch, the petitioner intended that G. Roe Purse should receive one-half of the profits of the Detroit business in lieu of the straight salary which he had been getting. However, the son continued to use his drawing account of $60 a week and reported the sum of $3,020 as salary from Purse Brothers in addition to reporting one-half of the uncredited profits of the partnership. Petitioner testified at the hearing that this amount of $3,020 should have been deducted from the son's one-half of the profits. This is in accordance with a statement appearing in a written protest filed on behalf of petitioner under date of November 11, 1930, as follows:

In comparing the return, however, an error was made, in that an item of $3,020 was used as a deduction in arriving at the profits from the Detroit branch of the business. This $3,020 represents the amount of partnership profits actually drawn by G. Roe Purse.

We do not have before us the question of the son's tax liability, so we need not consider whether he reported more income than he was entitled to receive. It suffices to say that the son did report the amount of $7,580.11 as his distributive share of the income of the partnership.

The partnership known as Purse Brothers had been operating since 1912 as a kind of " family affair." Its business was handled in a very informal manner with respect to making agreements and keeping records. Petitioner was the only person to put any money into the business and each partner contributed personal services. Although various changes were made from time to time in the members of the partnership and the terms upon which each individual partner agreed to devote his services to the business, no agreement in writing was ever executed with regard to a division of the partnership income.

After Artie Purse went to Toledo in the fall of 1927, petitioner was left entirely in control of the Detroit branch of the business. His son was a valued employee of the partnership, upon whom the petitioner greatly relied. Petitioner testified that his son was worth more than an individual outside the family rendering the same services and it is natural to suppose that the son took a special interest in building up the business which he might some day inherit. The record contains ample evidence upon which to base the opinion that the son was taken into partnership by the petitioner with the understanding that the son should share equally with the petitioner in the profits of the Detroit business. We accordingly hold that the respondent erred in including in petitioner's taxable income for 1928 all of the profits of the Detroit branch of the business.

*Judgment will be entered for the petitioner.*